## Mears v. Miller.

*Ejectment—Evidence—Boundaries—Plan of town lots.*

1. In an action of ejectment to recover a narrow strip of land in a town, a plan of the town 130 years old offered in evidence is properly rejected where there is no offer to show that the lots as laid out in the plan were identical in width as they existed or were claimed to exist at the time of the trial; and this is especially proper where it appears that the strip in controversy was claimed by adverse possession.

*Practice, C. P.—Trial—Charge—Comment on evidence.*

2. A new trial will not be granted on the ground that the trial judge specifically called attention to the evidence most favorable to plaintiff without calling due attention to evidence favorable to defendant where it appears that no injustice was done, and that if the judge did comment somewhat more on the testimony of plaintiff than on that of defendant, it was because there was more of it to comment upon.

Ejectment. Reasons for new trial. C. P. Lycoming Co., June T., 1924, No. 308.

*Otto G. Kaupp* and *Charles J. Reilly*, for plaintiff.

*William C. Currin* and *Frank P. Cummings*, for defendant.

POTTER, P. J., 17th judicial district, specially presiding, Dec. 26, 1925.— This is an action in ejectment brought by the plaintiff for the recovery from the defendant of a narrow strip of land, one foot and seven-tenths wide along Fourth Street and six and three-eights inches wide along Spice Alley, located in the town of Newberry, which is occupied and claimed by the defendant, and which is also claimed by the plaintiff.

This case was duly tried before a jury on June 10, 1925, and several succeeding days, who rendered a verdict for the plaintiff for the lands described in the writ.

We are asked by the defendant to grant a new trial, two reasons for which were filed, which we have before us for disposal.

The plaintiff maintains that he should recover by reason of his paper title, as well as by adverse possession, which, of course, is resisted by the defendant.

So far as concerns the paper title, we can only say that evidence was submitted by two sets of surveyors, one for the plaintiff and one for the defendant. We submitted them both to the jury, with what we considered adequate instructions, and by their verdict they have apparently accepted the survey of the plaintiff on which to base their verdict, and as to the claim of adverse possession, they must have done likewise.

The first reason set up by the defendant is as follows: "Because the court erred in refusing to admit in evidence on the part of the defendant the plan of the town of Newberry."

Newberry is a town lying adjacent and, for all we know, contiguous to Williamsport, and we are inclined to believe from some evidence offered may be a part of it. But this is not a vital question in this case.

Mears *v.* Miller.

The plan of Newberry, offered in evidence, and which we did not admit, was made in the year 1794. It was offered as tending to show that the lots in question herein were laid out in that year as of sixty-five feet in width, being lots numbers 18 and 19 on said plan, but there was no offer to show that the lots as then laid out were identical in width as they now exist or are claimed to exist. From the year 1794 to the time of the arising of this controversy, several years back, an adverse possession may have changed the boundary-lines of the respective lots very materially, as is herein claimed by the plaintiff. We had this proposition in mind when we refused the admission into the evidence in this case of the old, if not ancient, plan of Newberry.

The case of Birmingham *v.* Anderson, 48 Pa. 253, is cited to us as tending to show the admissibility of the said plan of Newberry, but upon an examination of that case, we are of the opinion that the facts are quite different from those in the case at bar. In that case the streets were laid out by the founder to the beach of the river, along which a public thoroughfare was also laid out by him. Certainly the lots running towards the river could not run through this thoroughfare. Therefore, a plan of the town showing the existence of this thoroughfare along the beach of the river was admissible in order to show that the lots, as laid out originally, running towards the river, could not in any way extend into and over this public thoroughfare. But how would this old plan of Newberry, made in 1794, in any manner assist us in fixing the boundary-line between this plaintiff and this defendant, when, by 130 years or upwards of encroachments, the lines, for all we know, may be entirely changed, and what was a street or boundary-line then, may not be so now. On the trial of this case we did not consider it evidence, and we are of the same opinion yet. We are also bearing in mind that the chief claim on the part of the plaintiff is adverse possession, in which event this old plan of Newberry would not shed any light on the controversy.

The second reason is as follows: "Because the court erred in specifically calling attention to the matters in evidence most favorable to the plaintiff without calling due attention to matters of evidence favorable to the defendant."

This may be regarded as a polite way of saying the court did not do his duty or was partial. We cannot help but say we regard this as an unkind accusation. We knew neither of the parties to this suit, had no interest whatever in its ultimate outcome, and, personally, did not care one iota how the jury decided the questions submitted to them, except that we wanted to see justice done between these contending parties according to the evidence presented in the trial of the case, which, we think, has been done. We did comment somewhat more on the testimony of the plaintiff than on that of the defendant, for the very good reason that there was more of it to comment upon. The testimony of the defendant on the question of adverse possession was rather meagre, and he, when testifying on cross-examination, produced his testimony in rather an uncertain manner. We gave his testimony, as well as that of his witnesses, our full consideration in our charge. We endeavored to state the claim of facts on both sides to the jury impartially, and when counsel for the defendant reminded us that we had inadvertently omitted to mention to them that of the fact of the planting of the hedge fence, we gladly reminded them of this incident. We do not see how we could have done more. In fact, a judge need not recount the testimony of the witnesses to the jury. It is exclusively for them to pass upon. We find, in reading over our charge, that we repeatedly told the jury that this question must be decided by them, and that we had no opinion to express to them as to the merits of the case, or words to that effect.

Mears *v.* Miller.

It is very easy to find fault with the manner in which a judge conducts the trial of a case, and it is very easy to pick imaginary flaws, but, from our experience thus far, we are of the firm opinion that the judges of this Commonwealth at all times endeavor to see that justice is meted out to whom it is due. That is what we have endeavored to do in this case, and this will be our constant endeavor so long as we occupy a place among the judiciary of Pennsylvania.

We have taken some time in going over the records and the testimony in this case. We think it was fairly tried and properly disposed of and that the reasons assigned for a new trial fall short of merit.

And now, to wit, Dec. 26, 1925, the reasons filed for a new trial are dismissed, the new trial is refused, and it is directed that judgment be entered upon the verdict upon compliance with the requirements of the law and of the rules of practice of Lycoming County.

From Charles P. Ulrich, Selinsgrove, Pa.